IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01615-PSF

CORA HAMPTON,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter was set for oral argument on April 28, 2006 at 9:00 a.m. on plaintiff's appeal of denial of social security benefits. The Court has received the arguments and submissions of counsel, has vacated the hearing set for April 28, 2006, and now enters the following Order.

## I. BACKGROUND

Plaintiff Cora Hampton appeals from the decision of the Commissioner denying her application for social security disability benefits. The decision of the Commissioner became final on June 24, 2005 when the Appeals Council notified plaintiff that it found no reason to review the decision of the Administrative Law Judge ("ALJ"), which had been entered on September 16, 2004 (AR[1] 6). Plaintiff timely filed her appeal from the final decision of the Commissioner on August 19, 2005. The Court has jurisdiction to

---

[1] The Administrative Record in this case (AR) consists of one volume, pp. 1-336.

review the final decision of the Commissioner of Social Security under 42 U.S.C.§ 405(g).

Plaintiff filed her claim for benefits on February 17, 2003, seeking disability benefits beginning April 15, 2002, due to bulging discs in her back, stenosis in her spine, a blocked artery in her left leg and arthritis in the spine, all of which she claimed made it painful for her to stand more than ten minutes at a time (AR 125-26). She also stated that her condition can be depressing because she is "used to being active and able to do things without having to ask for help." (AR 126). Plaintiff did not initially mention obesity as an illness, injury or condition affecting her ability to work.

After initial denial of her claims, plaintiff appealed and a hearing was held before the ALJ in Denver, Colorado on August 6, 2004 (AR 27-77). Plaintiff testified at the hearing and was represented by counsel. Also testifying were plaintiff's husband, Willie Hampton, Dr. Gayle Humm, a medical expert, and Paul Pauline, a vocational expert.
Upon review her application was denied in the written decision of the Administrative Law Judge issued on September 16, 2004 (AR 16-24).

Subsequent to the ALJ's decision and while her appeal was pending, plaintiff apparently filed another application for disability. By letter dated December 24, 2005, the Commissioner, without detailed explanation, found plaintiff disabled with an effective disability date of September 17, 2004, the date following the decision of the ALJ (*see* Exhibit A attached to Plaintiff's Reply Brief). Nonetheless, the Commissioner apparently maintains her position that plaintiff did not meet the test of disability for the

previously claimed period commencing March 2, 2002, and thus this appeal of the ALJ's decision of September 16, 2004 remains pending.

## II. THE ALJ'S DECISION OF SEPTEMBER 16, 2004

In his written decision of September 16, 2004, the ALJ denied plaintiff's application for benefits at step four of the five-step process. *See generally Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to return to her past relevant work as a word processor, data entry clerk and telemarketer, as these jobs are generally performed in the national economy (AR 23).

In reaching his determination, the ALJ found plaintiff was suffering from medically determinable severe impairments including scoliosis, stenosis, and degenerative disc disease of the lumbar spine, and occlusion/peripheral vascular disease (AR 17). The ALJ also found that plaintiff was suffering from hypertension, but found that it did not constitute a severe impairment because it does not impose more than a minimal effect on plaintiff's ability to work (*id*). Similarly, the ALJ found that plaintiff had a history of depression, but also found that it does not impose more than a minimal effect on plaintiff's ability to work (*id*). Finally, the ALJ stated that "claimant's attorney argues that the claimant . . . has the severe impairment of obesity." (*id.*). But the ALJ found that while treating and examining physicians have found that plaintiff is "overweight," the medical evidence contained no diagnosis of obesity and no evidence with regard to the effects of claimant's weight on her other impairments, thus the ALJ found that claimant "does not have the medically determinable impairment of obesity." (*id.*).

The ALJ found, at Step 3 of the sequential analysis, that none of these severe

ailments met the listed impairments of Appendix 1 to Subpart P of the Social Security regulations (AR 17-18), a finding which plaintiff apparently does not challenge on this appeal.

The ALJ determined that notwithstanding her physical impairments due to scoliosis, stenosis, and degenerative disc disease of the lumbar spine, and occlusion/peripheral vascular disease, plaintiff had the residual functional capacity ("RFC") to perform sedentary work with postural shifts that do not require leave of the work station, with the following restrictions: no performing work while balancing or climbing at heights; no exposure to dangerous machinery or temperature extremes; no crawling or crouching; no exposure to excessive vibration; no driving as it relates to work-related activities; and only occasional stooping, pushing/pulling, climbing stairs and operating foot controls. The ALJ explained that sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and that although a sedentary job primarily involves sitting, it may also require occasional walking and standing. (AR 22).

As previously stated, notwithstanding these limitations and impairments, the ALJ concluded plaintiff could return to her past relevant work as a word processor, data entry clerk and telemarketer (AR 23, 24). Based on testimony from the vocational expert, the ALJ found that these jobs are "semi-skilled and performed at the sedentary level of exertion" in the national economy, and do not require performance of activities inconsistent with plaintiff's RFC (AR 23). Accordingly, the ALJ determined that plaintiff had not met her burden to show that her impairments precluded her from performing

her past relevant work, and therefore he found she was not disabled as defined in the Act (*id.*).

## III. PLAINTIFF'S APPEAL

On appeal plaintiff argues that substantial evidence in the record does not support the ALJ's determination for several reasons. She first argues that the ALJ erred by failing to find that plaintiff had three other severe impairments beyond those recognized by the ALJ in the written order, namely a cervical spine impairment, obesity and mental impairments (Plaintiff's Opening Brief at 13-18). She next argues that the ALJ failed to give proper weight to the opinions of plaintiff's treating physician, Dr. Scott Primack (Plaintiff's Opening Brief at 18-22). Third, she argues that the ALJ failed to properly evaluate the credibility of plaintiff's testimony as it relates to her pain and its effect on her work (Plaintiff's Opening Brief at 22-24).

## IV. ANALYSIS

### A. Whether the ALJ properly found plaintiff's severe impairments did not include cervical spine impairments, obesity or mental impairments

*1. Obesity*

The Court first addresses plaintiff's argument regarding the obesity finding, as it appears to arise from a misreading of the ALJ's decision. Plaintiff argues that the ALJ "determined that Ms. Hampton's obesity was severe but that it was not a 'medically determinable' because it was not 'diagnosed.'" (Plaintiff's Opening Brief at 15). Plaintiff's opening brief argues that this finding is "internally inconsistent" because if the obesity is severe it must be medically determinable (*id.*). However, plaintiff misreads

the ALJ's determination. What the ALJ said, as set forth above, is that plaintiff's counsel **argued** the obesity was "severe." (AR 17). The ALJ made no such finding. Plaintiff recognizes this misreading in her reply brief and withdraws this argument (Reply Brief at 9).

Alternatively, plaintiff maintains her argument that she was diagnosed as obese on "two separate occasions" by her treating doctor, citing to AR 260-61 (Plaintiff's Opening Brief at 15). She argues the ALJ erred in not including these diagnoses in his findings of impairment. However, the Court has reviewed the medical notes appearing in the record at the pages cited by plaintiff, and while there is one note which states "Cont[inues] to be overweight, but unchanged" that note does not state that plaintiff is obese, nor does it constitute a medical finding because the notation is a record of the plaintiff's subjective statements. One who is overweight may not necessarily be subject to a medical diagnosis of obesity, or at least the record does not mandate that conclusion.

### 2. Mental Impairment

Plaintiff argues that the ALJ erred in finding that her alleged depression did not constitute a severe impairment because it did not impose more than minimal limitations (Plaintiff's Opening Brief at 16-17), and apparently argues that the ALJ erred by not ordering a consultative examination to resolve conflicting or inconclusive medical evidence, citing to *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997).

In support of her argument plaintiff asserts that the ALJ erred by not giving proper weight to a report from her "treating doctor" dated May 15, 2003 (AR 304) and

instead relying on a report from a non-examining medical consultant, Dr. Ryan, who completed a Psychiatric Review Technique ("PRT") form dated April 8, 2003 (AR 205-17) (Plaintiff's Opening Brief at 16-17).

The Court does not agree that the ALJ erred by failing to give weight to the so-called "treating doctor's" report of May 15, 2003.  First, the Court notes that the report is a handwritten, one-page document that appears to be notes of a patient visit with Dr. Sharon Hansel, Doctor of Osteopathy.  Dr. Hansel has not been shown to have special expertise in the treatment of mental impairments, beyond prescribing an antidepressant.  Nor does her "report" specifically deal with plaintiff's mental health.  Rather, Dr. Hansel's notes simply contain a notation that during examination plaintiff was "tearful, very anxious/frustrated." (AR 304).  By its own terms, these notes do not provide a diagnosis of depression.  Moreover, they provide none of the objective medical or clinical findings that would entitle the treating doctor's opinion to greater weight.  20 C.F.R. § 404.1527(d)(2) provides that the treating physician's opinion may be entitled to controlling weight, but only to the extent that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence" in the case record.  That is not the case here insofar as the report of Dr. Hansel is concerned.

Conversely, the report by Dr. Ryan, to be sure a consultative non-examining physician, is as noted specifically directed to evaluating plaintiff's mental health, relates that the plaintiff has a history of depression (AR 208), but concludes that the degrees of plaintiff's functional limitation severity caused by depression are mild or not present

(AR 215). Moreover, the report points out that plaintiff was not in therapy, had not been hospitalized, was not seeing a psychiatrist nor was she then currently on medications (AR 217). Therefore, Dr. Ryan opined that plaintiff's condition is considered non-severe (*id.*).

Plaintiff argues that Dr. Ryan's report was not accurate because she did not have the "most up-to-date information" about plaintiff's mental condition, whereas Dr. Hansel supposedly did, one month later on May 15, 2003 (Plaintiff's Opening Brief at 16). However, there is nothing in Dr. Hansel's one page of notations that indicates she performed any laboratory tests, or performed any type of evaluation specific to plaintiff's mental health that would have revealed new information not known to Dr. Ryan one month earlier. Accordingly, the Court can not find that the ALJ erred in not giving more weight to the "opinion" of Dr. Hansel in finding that plaintiff's history of depression did not constitute a severe impairment.

In addition, the decision in *Hawkins v. Chater, supra*, does not require the ALJ to refer every claimant for a consultative examination. Rather, the case starts from the proposition that although the ALJ's responsibility to develop the record may require the ALJ to order a consultative examination "the Secretary has broad latitude in ordering consultative examinations." 113 F.3d at 1166. When the record contains "some objective evidence" suggesting the existence of a condition which could have a material impact on the disability decision, a consultative examination should be considered. *Id.* at 1167. But, to justify the need for a consultative examination, the medical evidence must be in direct conflict or inconclusive. *Id.* at 1166. The claimant has the burden of

establishing that there is sufficient evidence in the record to suggest a reasonable possibility that a severe impairment exists. *Id.* at 1167. Here, as noted above, there was no medical evidence stating that plaintiff had a disabling condition of depression.

In addition, the testimony by plaintiff and her husband at the hearing are not sufficient to require an independent consultative examination. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.* On the record before it, the Court cannot say that the ALJ erred in failing to order a consultative mental examination of plaintiff.

### 3. *Cervical Spine Impairment*

The plaintiff argues that the ALJ erred by failing to include her cervical spine ailments as severe impairments. More specifically, plaintiff contends that the ALJ, although addressing her **lumbar** spine problems, in effect overlooked or failed to address the medical evidence detailing plaintiff's separate **cervical** spine impairments.

To be sure, the record does contain objective medical evidence of cervical spine problems in plaintiff, including degenerative disc disease, some foraminal stenosis,[2]

---

[2] Stenosis is defined in the On-Line Medical Dictionary as a narrowing or stricture of a duct or canal. <http://cancerweb.ncl.ac.uk/cgi-bin/omd?query=stenosis+&action=Search+OMD>

The invertebral foramen are one of a number of openings into the vertebral canal bounded by the pedicles of adjacent vertebrae above and below, the vertebral body (mostly of the superior vertebra) and intervertebral disc anteriorly, and the articular processes forming the zygopophyseal joint posteriorly. <http://cancerweb.ncl.ac.uk/cgi-bin/omd?foramen+intervertebrale>

and syrinx deformity.[3] (AR 293-95). Plaintiff asserts that these problems caused her to have significant pain in her arms and neck, and tingling in her left arm (Plaintiff's Opening Brief at 14). The ALJ did consider the plaintiff's cervical spine issues as presented in the report of Dr. Primack (*see* AR 20-21, where the ALJ notes the diagnosis of cervical spondylosis,[4] a syrinx at C2-3, foraminal stenosis and radiculitis at the level of the C6 dermatome) but the ALJ did not specifically determine whether the cervical spine ailments noted there constituted severe impairments.

Plaintiff asserts that the cervical spine problems were "severe in that they imposed limitations on her such that she was required to change positions every 5-10 minutes." (Plaintiff's Opening Brief at 14). Although plaintiff does not cite to any medical opinion to support this particular limitation, the Court finds that it is partially consistent with the opinion expressed by Dr. Primack in his report of May 24, 2004 (AR 312-19). Plaintiff argues that the ALJ's failure to "even mention" these impairments prevents judicial review of his findings, leaves the court with no basis for determining whether or not they are severe, and whether they imposed any limitations on plaintiff.

---

[3] According to the Merck online medical library, a syrinx is a fluid-filled cavity that develops in the spinal cord (called a syringomyelia). <http://www.merck.com/mmhe/sec06/ch093/ch093f.html>

[4] Cervical spondylosis is defined as a degenerative joint disease of the cervical (neck) spine resulting in a progressive erosion of the cartilage lining the weight bearing joints in the neck. Progressive bony calcification can lead to obstruction of exiting nerve roots resulting in neurological symptoms. <http://cancerweb.ncl.ac.uk/cgi-bin/omd?query=cervical+spondylosis&action=Search+OMD>

Plaintiff argues that this failure by the ALJ requires at least a remand (Plaintiff's Brief at 14-15). While such an omission might justify a remand, the Court finds that the record here is such that a remand on this issue is not necessary for the following reasons:

In his narrative report Dr. Primack provided a diagnosis, as the ALJ noted, of cervical spondylosis, a syrinx at C2-3, foraminal stenosis and radiculitis at the level of the C6 dermatome (AR 312-13). In his accompanying residual functional capacity assessment (AR 315-19), Dr. Primack notes that plaintiff's condition of cervical spondylosis and the syrinx at C2-3 contribute to limiting plaintiff to sitting and standing up to 30 minutes at a time without interruption, as opposed to the 5-10 minute limitation referenced by plaintiff (AR 316). Dr. Primack also opined that plaintiff's spinal stenosis at the cervical joints contribute to limiting plaintiff's activities so that she should "never" climb ladders and scaffolds, crouch, kneel or crawl, and should only occasionally climb stairs and stoop (AR 317).

While it is true that the ALJ never made a specific finding as to severity of these cervical spine impairments, he did implicitly include the impact of these impairments, as set forth by Dr. Primack, in making his written determination of plaintiff's residual functional capacity. The ALJ found that plaintiff's RFC did not allow her to perform work while balancing or climbing at heights; did not permit any crouching or crawling; and that she could only occasionally stoop or climb stairs (AR 24). In his oral presentation to the vocational expert at the hearing, he included the limitation of "no kneeling" as well (AR 74). The ALJ also found in his written findings, and included in his hypothetical, that while plaintiff could perform sedentary work, she had to be

permitted "postural shifts that do not require her to leave the work station." (AR 24, 74). Although the ALJ did not quantify how frequently the plaintiff needed to engage in these postural shifts, the Court finds that this limitation incorporates Dr. Primack's opinion that plaintiff can not sit (or stand) more than 30 minutes at a time without interruption.

Therefore, although the ALJ did not make an express finding on the degree of severity of plaintiff's cervical impairments, despite having acknowledged their presence, he does appear to have taken into consideration the limitations relating to those impairments in formulating the plaintiff's RFC to the extent there were medical opinions to support such limitations. Accordingly, a remand solely to address the cervical spine issues does not appear to be necessary here.

### B. Whether the ALJ failed to did not give proper weight to the opinion of plaintiff's treating physician, Dr. Scott Primack

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of Dr. Primack, plaintiff's treating physician, and instead giving controlling weight to the opinion of Dr. Humm, a non-examining medical expert who did not provide a written report, but who did testify at the hearing (AR 34-44).

With respect to the opinion of Dr. Primack, the ALJ stated that he accepted and gave "great weight" to the opinion, "other than the stated restrictions on sitting, standing and walking and the portions stating that the claimant cannot travel without a companion for assistance or use standard public transportation." (AR 21). However, as noted above, the ALJ did appear to accept Dr. Primack's limitations as to the need for

plaintiff to make postural shifts while sitting in formulating plaintiff's RFC, (*i.e.* no sitting without interruption for more than 30 minutes). But he did not accept Dr. Primack's overall limitation for sitting of no more than three hours total in an eight hour work-day, standing for no more than 4 hours total in an eight hour work-day, and walking for one hour at a time with no more than three hours total in an eight hour work-day (AR 21; 316). The only reason given by the ALJ for rejecting those portions of Dr. Primack's opinion is the statement that they "are not supported by the objective medical signs or findings or explanation, and are not consistent with the opinion of the medical expert, discussed below." (AR 21).

In contrast, the ALJ credited the opinion of Dr. Humm (AR 21), as expressed at the hearing, that plaintiff has the ability to (1) sit for six hours in an eight-hour day, with a position change every hour; (2) stand and walk for two to four hours in an eight-hour day; with intervals of one hour at a time and resting for a brief period of five minutes (AR 38-39). The ALJ found that this opinion was entitled to "great weight as supported by and consistent with the objective medical evidence and supported by explanation." (AR 21).

The differences between these two opinions impacts whether plaintiff can perform the full range of sedentary work. Social Security 96-9P, 1996 WL 374185 at *6, provides that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day,

the unskilled sedentary occupational base will be eroded." In addition, the vocational expert at plaintiff's hearing was presented with a hypothetical that would required the employee to take more frequent breaks that would result in sitting less than the prescribed six hours in an eight-hour day, and opined that such a person would be precluded from plaintiff's past relevant work (AR 75).

As indicated above, there are established social security regulations that apply to the weight to be given to an opinion of a treating physician. 20 C.F.R. § 404.1527(d)(2). If the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, it is entitled to controlling weight. *Id.* If the treating physician opinion is not given controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Id.*

Here, to be sure, the ALJ gave a reason for not giving controlling weight to all of Dr. Primack's opinion, but the Court finds that in the context of this case that reason does not constitute "good reasons." As the court stated in *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004), good reasons are reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." 366 F.3d at 1082. The Court finds several aspects in which the ALJ's references to Dr. Primack's fall short here.

First, the ALJ did not in any way explain or elaborate on why he found that Dr. Primack's opinion was not supported by medical evidence. Second, he did not explain

how the opinion was inconsistent with other substantial evidence in that he did not identify what the other substantial evidence was.  Third, to the extent he stated that the opinion of Dr. Primack was "inconsistent' with the opinion of Dr. Humm, the Court cannot say that Dr. Humm's opinion constitutes "other substantial evidence" for she performed no examination of plaintiff.  And she, like Dr. Primack, relied on the available medical records and tests in formulating her opinion.  Dr. Humm simply came to a different conclusion than did Dr. Primack, looking at the same database.

The Court also notes that the ALJ commented that Dr. Humm's opinion was based "on a review of the entire evidence." (AR 21).  This implies that the ALJ may have thought that Dr. Primack's opinion was not based on all the evidence.  However, there would be no basis for such a finding, and such a presumed distinction cannot provide a reason for rejecting Dr. Primack's opinion in favor fo Dr. Humm's.

The record here shows that Dr. Primack treated plaintiff from at least March through August 2003 (AR 280-90).  His initial diagnosis from March 17, 2003 indicates a finding of neurogenic claudication secondary to spinal stenosis and likely peripheral neuropathy (AR 290).  The diagnosis of components of spinal stenosis was confirmed by a CT scan (AR 288).  A nerve conduction study performed on March 29, 2003 confirmed evidence of a peripheral neuropathy, and spinal stenosis (AR 280, 287).  Based on a visit on April 10, 2003, Dr. Primack noted that plaintiff had difficulty going from standing to sitting and the reverse (AR 287).  In a visit on May 7, 2003, Dr. Primack discussed the spinal stenosis and suggested to plaintiff that treatment by way of an epidural might relieve her back and leg pain (AR 286).  In a visit of June 4, 2003,

Dr. Primack noted "areterial stenosis" and claudication, as well as lumbar spinal stenosis, and that her lower extremity discomfort had increased (AR 285). On August 1, 2003 (in what became her final visit to Dr. Primack for some time) he noted her ongoing back pain, lower extremity problems, and her reluctance to undergo any type of injection therapy (AR 284).

It certainly appears from the above medical records that as of August 2003, Dr. Primack had not diagnosed or treated plaintiff for cervical spine problems. But shortly thereafter, plaintiff came under the care of Drs. Barker and Jamrich, who did begin to recommend the above-referenced tests that reflected plaintiff's cervical spine problems in addition to the lumbar spine problems (*see* AR 298). An MRI of plaintiff's cervical spine performed on September 30, 2003, revealed the degenerative cervical disc condition, the foraminal stenosis and the small syrinx discussed above and in the ALJ's decision (AR 293-95). Dr. Barker's notes indicate these conditions and others were discussed with plaintiff on October 7, 2003, at which time she was informed of possible surgical procedures that could be attempted, although none were being recommended (AR 296).

Although Dr. Primack is not indicated as the treating physician during this last referenced period, it is apparent from his May 24, 2004 report that he had access to all this information as to plaintiff's cervical spine situation, in addition to what he had gathered when he was treating plaintiff, as it is all referenced in his report (*see* AR 312-13). Thus, there is no basis for the suggestion that Dr. Primack may not have based his opinion on "all the evidence." There is no basis in the record to suggest that Dr.

Primack was lacking some of the information reviewed by Dr. Humm.  Moreover, if that were suspected, the ALJ could have recontacted Dr. Primack to ask for additional information.  *See Robinson v. Barnhart*, *supra*, 366 F.3d at 1084.

Thus, given that Drs. Primack and Humm were working off the same data, and given that Dr, Primack had been a treating physician, it appears that his opinion as to how many hours in a day plaintiff could sit, stand or walk, should have been given controlling weight, or at least specific reasons for rejecting this one portion of his opinion should have been stated.  This is particularly true because the ALJ stated that all other parts of Dr. Primack's opinion were entitled to "great weight" (AR 21).  "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."  *Robinson v. Barnhart*, *supra*, 366 F.3d at 1083. Moreover, even if the opinion of Dr. Primack is not entitled to controlling weight, it still must be weighed in accordance with the other factors listed in 20 C.F.R. § 404.1527(d).  *Id.* at 1082.

The Court recognizes that the ALJ has the substantial authority to decide between competing medical opinions, but in doing so he or she is bound to follow the established regulations.  Included in these regulations is recognition that opinions of physicians who have seen a claimant over a period of time for purposes of treatment are generally given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  *Id.* at 1084.  If the ALJ is going to discount the opinion of the treating physician in favor of a non-examining physician, he or she must have a "legally sufficient explanation for doing so."

*Id.* at 1084.  In the instant case, that explanation does not appear in the record.

## V.  CONCLUSION

For the above reasons, the Court concludes that this case should be remanded to the Commissioner for further consideration of the proper weight to be given the opinions of Dr. Primack, as expressed in his report of May 24, 2004, in accordance with the requirements of 20 C.F.R. § 404.1527(d).

DATED: May 25, 2006

BY THE COURT:

*s: Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge